AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH<br>(214) 433-2469  THAT IS STORED AT PREMISES<br>CONTROLLED BY VERIZON WIRELESS | )<br>)<br>)<br>)<br>)<br>) Case No.  2:20 CM ___35___ |

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Apr 1, 2020

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution, Possession With Intent to Distribute Controlled Substances |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:

See attached Affidavit of FBI SA Matthew Ferguson

☑ Continued on the attached sheet.

☑ Delayed notice of **30** days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Matthew Ferguson
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___4/1/2020 at 11:00 a.m.___

_____
*Judge's signature*

City and state:  Fort Smith, Arkansas

Hon. Mark E. Ford, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with **(214) 433-2469** (the **TARGET DEVICE**), whose wireless service provider is Verizon Wireless, a company headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made on March 5, 2020 under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A from March 5, 2020 until the date of this warrant:

a.      All SMS and MMS text content, and multimedia message content including photographs, videos and other files sent and received which are stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

d.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device

associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

      e.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Manuel PEREZ-ECHEVERRIA since March 5, 2020 for each account or identifier listed on Attachment A.

Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**(214) 433-2469** THAT IS STORED AT
PREMISES CONROLLED BY VERIZON
WIRELESS

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Ferguson, Special Agent of the Federal Bureau of Investigation (FBI) being

first duly sworn, hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that is stored at premises owned, maintained,

controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington

Valley Road, Bedminster, New Jersey 07921. The information to be searched is described in the

following paragraphs and in Attachment A.  This affidavit is made in support of an application for

a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon

Wireless to disclose to the government records and other information in its possession pertaining

to the subscriber or customer associated with the accounts, including the contents of

communications.

2.     I am a "federal law enforcement officer" within the meaning of Federal Rule of

Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal

laws and duly authorized by the Attorney General to request a search warrant.  I have been

employed as a Special Agent with the FBI since September 2009. Prior to my employment with

the FBI, I was employed as a Police Officer and Narcotics Officer by the City of North Little Rock, Arkansas Police Department from 2004 to 2009. I am currently assigned to the FBI Little Rock Division, Fort Smith Resident Agency where I am tasked with conducting criminal enterprise investigations. During my career as a Special Agent, I have been involved in a wide variety of investigative matters, including investigations targeting criminal enterprises involved in the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. During the course of these investigations, I have authored and reviewed multiple Title III wire intercept affidavits, coordinated the execution of search and arrest warrants, conducted physical surveillance, participated in controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and communicated with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.  Through my training and experience I have become familiar with the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 have been committed by **Manuel PEREZ-ECHEVERRIA** and his co-conspirators both known and yet unknown by

2

my investigation.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

5.     Special Agents (SA) of the FBI Little Rock Field Office, Fort Smith Resident Agency, Drug Enforcement Administration (DEA) Fort Smith Post Of Duty along with Officers of the Fort Smith Police Department (FSPD) Narcotics Unit and other law enforcement officers are conducting an investigation of a Drug Trafficking Organization (DTO) for which **MANUEL PEREZ-ECHEVERRIA, aka CHUY** and others both known and yet unknown through this investigation are members.  To date, investigating SAs and Officers have identified multiple individuals who are involved in the DTO's illicit drug trafficking and distribution activities. Further, it is known through this investigation that these individuals utilize cellular telephones to communicate and coordinate their drug trafficking activities.

6.     On February 27, 2020, the Honorable Magistrate Judge Mark E. Ford seated in the Western District of Arkansas issued a Search and Seizure Warrant for the GPS precision location data and other information related to the telephone (ending in 0077) which was being used by **PEREZ-ECHEVERRIA** to coordinate and conduct drug distribution and trafficking activities within the Western District of Arkansas (Case Number: 2:20 CM 18).  The Affidavit presented in Support of the Application for search warrant 2:20 CM 18 is incorporated herein by reference.

7.     On the same day, the 2:20 CM 18 search and seizure warrant was served on the wireless provider and no GPS precision location data was collected based on the warrant. Based on my training and experience, Affiant believes the GPS precision location data was not collected

due to **PEREZ-ECHEVERRIA** discontinuing use ("dropping") his cellular telephone ending in 0077. Affiant knows it is a common tactic of large-scale drug traffickers to drop their cellular telephones in order to evade law enforcement detection of their criminal activities. Further, based on interviews with a Confidential Source (CS) and as detailed in the 2:20 CM 18 Affidavit, Affiant knows **PEREZ-ECHEVERRIA** routinely dropped his cellular telephone and used multiple cellular telephones to coordinate and conduct his criminal activities during the course of the time CS was obtaining supplies of methamphetamine from him.

8.      Affiant interviewed CS who provided consent to search his/her cellular telephone in order to further corroborate information CS provided to law enforcement. During a review of the download of CS's telephone, Affiant reviewed multiple drug-related text messages between CS and **PEREZ-ECHEVERRIA** using the number ending in 0077. The following is one example of a text conversation between CS and **PEREZ-ECHEVERRIA,** whom the CS references as "Chuy":

| +14047480077 | * Chuy | 25/01/2020 16:42:03 (GMT-6) | Outgoing | Qué me estabas diciendo | What were you telling me? |
|---|---|---|---|---|---|
| +14047480077 | * Chuy | 25/01/2020 16:42:42 (GMT-6) | Outgoing | Ay Disculpa es que no te escuchaba porque él XXXX estaba hablé hable también | Oh sorry, it's just that I couldn't hear you because XXXX was also talking to me. |
| +14047480077 | * Chuy | 25/01/2020 16:43:55 (GMT-6) | Incoming | te puedo dar 5 y media | I can give you 5 and a half. |
| +14047480077 | * Chuy | 25/01/2020 16:46:20 (GMT-6) | Outgoing | Cuanto por las 8 | How much for the 8? |

| | | | | | |
|---|---|---|---|---|---|
| +14047480077 | * Chuy | 25/01/2020 17:04:18 (GMT-6) | Incoming | 2100 | 2,100.00 |
| +14047480077 | * Chuy | 25/01/2020 17:04:59 (GMT-6) | Incoming | 2000 pero tu ganale lo q puedas | 2,000, but you win what you can. |
| +14047480077 | * Chuy | 25/01/2020 17:08:02 (GMT-6) | Outgoing | Pues acupo las 5 y media aunque sea para este señor que trae el dinero | Well I need the 5 and a half, at least for this man that has the money. |
| +14047480077 | * Chuy | 25/01/2020 17:08:47 (GMT-6) | Incoming | donde las vas?a llevar | Where are you taking it? |
| +14047480077 | * Chuy | 25/01/2020 17:08:51 (GMT-6) | Incoming | ? | ? |
| +14047480077 | * Chuy | 25/01/2020 17:10:13 (GMT-6) | Outgoing | Con mi amigo el que está por la Midland donde fue el XXXX el otro día | With my friend that's over by Midland, where XXXX went the other day. |
| +14047480077 | * Chuy | 25/01/2020 17:10:38 (GMT-6) | Incoming | ok | Okay. |
| +14047480077 | * Chuy | 25/01/2020 17:10:49 (GMT-6) | Incoming | ahorita te miro pues? | I'll see you shortly then? |
| +14047480077 | * Chuy | 25/01/2020 17:18:57 (GMT-6) | Outgoing | Okay esta bien | Okay, that's fine. |
| +14047480077 | * Chuy | 25/01/2020 18:21:29 (GMT-6) | Outgoing | En que troka andas | In what truck are you in? |
| +14047480077 | * Chuy | 25/01/2020 18:22:55 (GMT-6) | Outgoing | I'm parked by the panera | I'm parked by the Panera. |
| +14047480077 | * Chuy | 25/01/2020 18:39:56 (GMT-6) | Outgoing | Hey it's only 138.5g | Hey, it's only 138.5g. |

5

| +14047480077 | * Chuy | 25/01/2020 18:45:55 (GMT-6) | Incoming | ya bajo mas? | It went down more? |
|---|---|---|---|---|---|
| +14047480077 | * Chuy | 25/01/2020 18:46:31 (GMT-6) | Outgoing | No it's not on the scale right | No, it's not on the scale right. |

9.      Based on my training and experience and interviews of CS, Affiant knows this text message conversation between CS and **PEREZ-ECHEVERRIA** was discussing a methamphetamine transaction. When CS referred to "8," he/she was requesting eight ouncs of methamphetamine. However, when CS and **PEREZ-ECHEVERRIA** finally agreed to the transaction, they settled on conducting the transaction of 5 1/2 ounces for $2000. Affiant knows this is consistent with current street-level prices for quantities of methamphetamine. When CS stated he/she was at the "Panera," Affiant believes he/she was indicating to **PEREZ-ECHEVERRIA** where they would meet and conduct the drug transaction. Finally, when CS texted **PEREZ-ECHEVERRIA** "it's only 138.5g." he/she was telling **PEREZ-ECHEVERRIA** the methamphetamine weight was only 138.5 grams which is far less than the 145 grams (5 ounces) they had agreed upon.

10.      Based on toll record analysis of **PEREZ-ECHEVERRIA's** telephone number ending in 0077, investigators were able to identify a new telephone number for **PEREZ-ECHEVERRIA**, (210) 238-2870. Based on interstate coordination of investigations with DEA Dallas Field Division, Affiant and other SAs discovered **PEREZ-ECHEVERRIA** had traveled to the Dallas, Texas area to obtain a large load of methamphetamine which he was planning to bring back to Arkansas for distribution. A DEA Dallas Division obtained recordings of telephone calls between a Mexico-based methamphetamine supplier and **PEREZ-ECHEVERRIA**, for which

6

**PEREZ-ECHEVERRIA** used his number ending in 2870. It is believed **PEREZ-ECHEVERRIA** was in Texas between the dates of February 21 and 27, 2020 attempting to coordinate this methamphetamine shipment. During this period, **PEREZ-ECHEVERRIA** was not observed on surveillance by Fort Smith, Arkansas based investigators, which further bolsters Affiant's belief **PEREZ-ECHEVERRIA** was in Texas during this period. In the end, the Dallas Field Division of the DEA reported that the transaction for which **PEREZ-ECHEVERRIA** traveled to Texas was disrupted, resulting in **PEREZ-ECHEVERRIA** once again dropping his 2780 phone in order to evade law enforcement.

11.     On March 2, 2020 DEA SAs utilized administrative subpoena powers to obtain subscriber information and toll records for the number ending in 2870 for which **PEREZ-ECHEVERRIA** discontinued use on or about February 27, 2020. The results of the subpoena confirm the phone number was in use from February 21 through the 27, 2020. No subscriber information was available for the phone. Affiant believes this confirms **PEREZ-ECHEVERRIA** used the phone ending in 2870 for the express purpose of setting up the drug transaction in Texas and dropped the phone on February 27, 2020, when he discovered the Texas methamphetamine re-supply was not going to occur.

12.     On March 3, 2020, Affiant and other SAs and TFOs involved in this investigation conducted surveillance of 1210 N. 46th Street, Fort Smith, Arkansas, the residence of Emmanuel Miranda, a known methamphetamine dealer who is believed to be supplied methamphetamine by **PEREZ-ECHEVERRIA**. Affiant knows Miranda is a methamphetamine distributor because SAs and TFOs have conducted law enforcement controlled purchases of methamphetamine with Miranda during the course of this investigation. Further, Affiant knows Miranda is the user of

7

telephone number (479) 650-0459. There is a current, ongoing pen register with trap and trace in use for this phone as well as an ongoing search warrant for GPS precision location data being monitored by law enforcement for this phone. (WDAR Case Nos. 2:20 CM 3 and 2:20 CM 11, respectively, which are incorporated by reference as if set out word for word herein.)

13.     At approximately 11:47 AM, a white GMC pickup bearing Oklahoma License Plate Number (LPN) JRH924 known to be one of the vehicles driven by **PEREZ-ECHEVERRIA** arrived at Miranda's residence and parked in the driveway.[1] A tall Hispanic male wearing a red shirt, blue jeans and a black hat who fit the description of **PEREZ-ECHEVERRIA** was observed exiting the truck, walking to the front door and entering the house. At approximately 12:01 PM, the Hispanic male was observed exiting the house, returning to the truck and leaving the residence. Surveillance SAs and TFOs conducted a mobile surveillance of the vehicle until it parked at a residence located at 1615 N. B Street, Fort Smith, Arkansas. The Hispanic male was observed going into an apartment at the residence. Surveillance SAs and TFOs were able to observe the Hispanic male and confirmed he fit the description of **PEREZ-ECHEVERRIA**. They also observed other vehicles associated with **PEREZ-ECHEVERRIA** parked at the residence.

14.     Affiant reviewed the pen register data for Miranda's phone and found the Miranda's 0459 telephone number received two incoming text messages from **(214) 433-2469** (the **TARGET DEVICE**) at 10:48 AM Central Standard Time (CST) on March 3, 2020. Affiant believes this

---

[1] A search warrant authorizing the placement of a tracking device for this vehicle was authorized by the Court the following day, on March 4, 2020 in WDAR Case No. 2:20 CM 19. The affidavit for 2:20 CM 19 is incorporated herein by reference as if set out word for word herein. The tracking device, at the time of this affidavit, has not yet been installed.

contact was **PEREZ-ECHEVERRIA** communicating with Miranda prior to visiting his residence.

15.     Affiant also reviewed the GPS precision data location for Miranda during the time **PEREZ-ECHEVERRIA** was observed present at Miranda's residence. GPS precision data location show Miranda's telephone (ending in 0459) was present at his residence before **PEREZ-ECHEVERRIA** arrived, at 11:37 AM, while **PEREZ-ECHEVERRIA** was inside the residence, at 11:52 AM and after **PEREZ-ECHEVERRIA** left Miranda's residence, at 12:12 PM. Affiant believes this confirms Miranda was present at the residence and met with **PEREZ-ECHEVERRIA** at the residence.

16.     On the same date, Affiant reviewed pole camera surveillance footage of Miranda's residence which showed the following: At approximately 10:53 PM, a maroon Dodge Charger arrived at Miranda's residence (1210 N. 46th Street, Fort Smith, Arkansas). Through this investigation, Affiant knows this Dodge Charger is another vehicle driven by **PEREZ-ECHEVERRIA**. At approximately 10:54 PM, a Hispanic male wearing a red shirt, blue jeans and a black hat who fit the description of **PEREZ-ECHEVERRIA** and who appears to be wearing the same clothes **PEREZ-ECHEVERRIA** was seen wearing earlier that day was observed getting out of the Dodge Charger and walking to the front door of the residence. While he was walking to the residence, **PEREZ-ECHEVERRIA** appeared to be talking on the telephone. **PEREZ-ECHEVERRIA** continued talking on the phone while he paced the front porch before entering the residence at approximately 10:55 AM.

17.     Affiant later reviewed telephone toll records for the **TARGET DEVICE** obtained by DEA administrative subpoena. These toll records show a call between the **TARGET DEVICE**

9

and a Mexico-based telephone number (52-16692550925) at 10:45 PM which lasted 10 minutes and 18 seconds. Affiant believes, based on observations made during review of pole camera footage and review of toll records for the **TARGET DEVICE** this call explains why **PEREZ-ECHEVERRIA** was talking on the phone and pacing the front porch of Miranda's residence in order to complete his telephone call prior to entering the house.

18.     Affiant further reviewed a toll record analysis of **PEREZ-ECHEVERRIA's** last three known phones (0077, 2870 and the **TARGET DEVICE**) and found there are multiple common called numbers between the three phones which are known through this investigation to be involved in the illegal distribution of methamphetamine throughout the Western District of Arkansas, including the telephones in use by Emmanuel Miranda, Makayla Martin, Traye Martin and Juan Parga.

19.     On February 19, 2020 the Honorable District Judge P.K. Holmes III seated in the Western District of Arkansas signed and authorized the Title III interception of wire and electronic communications of telephone number (479)561-5838.[2] This number is currently utilized by Alberto Ledesma, which the investigation has revealed is a methamphetamine distributor in the Fort Smith, Arkansas area. Too records indicate Ledesma has been in contact with **PEREZ-ECHEVERRIA** on both his 0077 number and the **TARGET DEVICE**.

20.     On March 3, 2020 at 11:01 PM, Title III wiretap monitors intercepted an incoming text message from the **TARGET DEVICE** to Ledesma using his telephone number. The incoming text message read, "Compa." Following this text message, on March 4, 2020 at 6:38 PM, Ledesma

---

2 WDAR sealed case no. 2:20 CM 16.

sent an outgoing text message to the **TARGET DEVICE** which read, "Ey." Affiant knows "Compa" is short for the Spanish term Compadre which is translated to the English term "Godfather." Although this is a common term of endearment used in Spanish communication and a way to refer to a close friend, it is also used in reference to a person's actual Godfather. CS provided information that he/she believes Ledesma is **PEREZ-ECHEVERRIA's** actual Godfather. Affiant believes **PEREZ-ECHEVERRIA** sent Ledesma this text message to provide him with his new telephone number, the **TARGET DEVICE**. Affiant believes Ledesma's reply is an indication that he received the text message and acknowledged **PEREZ-ECHEVERRIA's** new number as the **TARGET DEVICE**.

21.     On March 6, 2020, the Hon. Mark E. Ford authorized a search warrant allowing investigators to locate the **TARGET DEVICE** utilizing its GPS capabilities.[3] On March 12, 2020, Affiant reviewed GPS precision data location ("pings") for the **TARGET DEVICE** covering the period of March 10-12, 2020. On March 11, 2020, at approximately 2:00 AM, **PEREZ-ECHEVERRIA** and the **TARGET DEVICE** traveled to McAllister, Oklahoma.  Due to the nature of the "pings" of the **TARGET DEVICE** being a general area and not a precise location, Affiant can only assert **PEREZ-ECHEVERRIA** was in the area of McAllister, Oklahoma and stayed there until approximately 12:39 PM on the same date. At approximately 2:24 PM, **PEREZ-ECHEVERRIA** and the **TARGET DEVICE** arrived in the Fort Smith, Arkansas area.  After returning to the Fort Smith, Arkansas area, the **TARGET DEVICE** "pinged" in various areas throughout Fort Smith including at a local motel near the intersection of 11th Street and Garrison.

---

[3] WDAR Case No. 2:20 CM 22.

SAs and TFOs conducted surveillance of this motel and located the red Dodge Charger known to be one of the vehicles driven by **PEREZ-ECHEVERRIA** parked at the motel.

22.    Based on my experience and training and the facts known through this investigation, Affiant believes **PEREZ-ECHEVERRIA** traveled to McAllister, which is approximately halfway between Fort Smith, Arkansas and Dallas, Texas to obtain a methamphetamine re-supply. Upon returning to Fort Smith, he visited multiple locations to distribute parts of this methamphetamine supply to various distributors throughout the city. He then rented a room at the motel at 11th and Garrison in order to continue distributing this methamphetamine. Affiant knows it is a common tactic used by drug distributors when they are actively in possession of a large quantity of methamphetamine to rent multiple rooms in an area motel in order to "set up shop" and distribute their methamphetamine supply. This is done in an attempt to insulate themselves from law enforcement detection, to keep their actual residences secret from drug customers and to ensure they are near their drug supplies but not easily found in direct possession of the drugs. Affiant believes this explains why **PEREZ-ECHEVERRIA** and his vehicle are currently at the motel.

23.    Based on the information detailed herein, Affiant asserts there is probable cause to believe **PEREZ-ECHEVERRIA** is the user of the **TARGET DEVICE** and continues to use the **TARGET DEVICE** to communicate with co-conspirators, coordinate drug distribution activities and conduct ongoing criminal activities. Further, Affiant believes **PEREZ-ECHEVERRIA** carries the phone to locations where methamphetamine supplies are stored and uses the phone to arrange drug transactions with his drug customers. Affiant asserts a GPS/precision data location search warrant will assist investigators with identifying these locations and co-conspirators in

order to understand the scope of the DTO, to gain a better understanding of **PEREZ-ECHEVERRIA's** involvement in the DTO, to identify co-conspirators and to conduct enforcement operations which will lead to prosecution of DTO members for the federal criminal violations detailed herein.

24.     Based on my experience and training in narcotics investigations and through the facts established in this Affidavit, Affiant knows drug traffickers like **PEREZ-ECHEVERRIA** prolifically communicate with their cellular telephones via both voice and text messages. These drug traffickers often use their cellular telephones to send and receive SMS and MMS text messages which include prices, quantities and directions for the selling and distribution of illegal drugs; which contain photographs of drugs, cash representing drug proceeds, receipts, ledgers and firearms all relating to the sale, trafficking, storage, use and protection of their drug trafficking and distribution activities. In my experience, these text messages prove to be valuable evidence of drug trafficking conspiracies and provide investigators with knowledge and evidence of the inner workings of the DTOs. Therefore, based on my experience and training and my knowledge of this investigation to date, Affiant asserts there is likely evidence directly relating to violations described herein communicated via text messages which are stored and maintained by Verizon Wireless in the common course of their business.

25.     On 3/11/2020, Affiant served a Preservation Letter to Verizon Wireless for the text message content and related information regarding the **TARGET DEVICE** in accordance with Title 18 USC § 2703(f) for the period of 3/05/2020 until the service search warrant requested herein.

26.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

27.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers.  This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging."  Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission.  In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

28.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems.  This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages.  Providers may also have

14

information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

29.     Many wireless providers retain information about the location in which a particular communication was transmitted or received.  This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

30.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

31.     Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length

15

of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers.  In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).  The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

32.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

34.     Based on the forgoing, I request that the Court issue the proposed search warrant.

35.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

36.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court pursuant to local rules.  These documents discuss an ongoing criminal investigation that is neither public nor

known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Matthew Ferguson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _1st_ day of April, 2020.

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

18